UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BALJIT SINGH,

Petitioner,

v.

KRISTI NOEM, In her official capacity as Secretary of Homeland Security; GREGORY JOHN ARCHAMBEAULT, in his official capacity as Field Office Director, San Diego Field Office, U.S. Immigration & Customs Enforcement; TODD LYONS, In his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; PAMELA BONDI, In her official capacity as Attorney General; Warden of the Imperial Detention Facility,

Respondents.

Case No.:  26-cv-0932-GPC-MMP

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS.**

**[ECF No. 1]**

Before the Court is Petitioner Baljit Singh's petition for a writ of habeas corpus. ECF No. 1. For the reasons outlined below, the petition is GRANTED and Respondents are ORDERED to release Petitioner from custody IMMEDIATELY.

1

## BACKGROUND

Petitioner is a citizen of India. ECF No. 1, ¶ 1. Petitioner entered the United States on September 14, 2019, without inspection near San Luis, Arizona. *Id.* Petitioner was detained and claimed asylum based upon a fear of return to India based on political persecution. *Id.* Petitioner was released from custody on a $25,000 bond on October 24, 2019. *Id.*

Petitioner was re-detained by Respondents on January 21, 2026, at a Border Patrol checkpoint on Interstate 10. *Id.* Respondents did not have a warrant for Petitioner's detention, and Petitioner was not given a new bond hearing. Petitioner has since been detained at the Imperial Regional Detention Facility. *Id.*

On February 12, 2026, Petitioner filed a petition for writ of habeas corpus requesting his immediate release from custody. *Id.* at 12.[1] Specifically, Petitioner argues that his current detention violates the Immigration Nationality Act (INA) and his Fifth Amendment due process rights *Id.* ¶¶ 51-61.

On February 18, 2026, Respondents filed a response to the petition. ECF No. 4. Petitioner was given until the end of February 20, 2026, to file a traverse. *See* ECF No. 2. While the Court acknowledges that the time to file a traverse has not yet passed, upon review of the Petition and Response, the Court finds that additional argument is not necessary to inform its decision.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004).

---

[1] Page numbers are based on the CM/ECF pagination

26-cv-932-GPC-MMP

The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## DISCUSSION

Petitioner argues that his re-detention without cause violates the Due Process Clause of the Fifth Amendment. The Court agrees.

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner's: "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). *See also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by

3

the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

Here, because Petitioner was released on bond from DHS custody in 2019, ECF No. 1, ¶ 1, he maintains a protected liberty interest in remaining out of custody. The Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481.

"The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514, at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

As to the first *Mathews* factor, Petitioner has a significant private interest in his continued liberty. Thus, this factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12; *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

4

26-cv-932-GPC-MMP

Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, Petitioner has not received any bond or custody hearing upon his re-detention, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Id.* (quoting *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner in 2019, immigration officers determined that he was neither a flight risk nor a danger to his community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034. Respondents have not alleged that there has been a change in circumstance since Petitioner's 2019 release. *See* ECF No. 5. Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly, this factor also favors Petitioner.

Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). Further, Respondents have not indicated that a hearing will delay or obstruct Respondents' efforts to remove Petitioner. Overall, the Government's interest in detaining Petitioner without a hearing is low. *Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite its own prior determination that Petitioner was not a flight risk and

posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15. Accordingly, the Court ORDERS Petitioner's IMMEDIATE release.

Respondents, in their response to the petition, argue that the primary legal issues in this case are (1) whether Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) and (2) whether Petitioner is entitled to a bond hearing. ECF No. 4, at 2. In so arguing, Respondents acknowledge that this Court will likely be guided by previous decisions in this District finding that § 1226(a) applies to noncitizens like Petitioner, thereby entitling Petitioner to a bond hearing. ECF No. 4, at 3. Respondents further ask that, if this Court grants the petition, "it should decline to address" Petitioner's due process argument, noting that the Court is "not required" to make findings on issues "unnecessary to the results they reach." *Id.* at 4, n.3. Respondents' arguments fall short.

Immediate release is the appropriate remedy in this case, and Petitioner's due process arguments are essential to reaching this conclusion.[2] For the reasons discussed

---

[2] Indeed, having reached this conclusion on Petitioner's due process claims, the Court need not fully evaluate Petitioner's INA claims regarding whether his detention is governed by § 1225(b) or § 1226(a). However, the Court notes that it has previously found that § 1226(a) governs the detention and release of noncitizens like Petitioner. *See, e.g.*, *Nieto v. Casey*, No. 26-CV-0186-GPC-AHG, 2026 WL 125602, at *2-*5 (S.D. Cal. Jan. 16, 2026);

above, an order requiring a bond hearing would be insufficient to cure the due process violations faced by Petitioner. Respondents have failed to substantively engage with Petitioner's due process arguments or acknowledge that Petitioner has been re-detained without cause after being released bond. Accordingly, the Court is not persuaded by Respondents' arguments and orders Petitioner's release.

<strong>CONCLUSION</strong>

Based on the reasoning above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as to Petitioner's requested release from custody.

2. Because the government has no evidence that Petitioner poses a flight risk or danger to the community, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody. Respondents **SHALL NOT** impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a later custody hearing.

3. Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.

**IT IS SO ORDERED.**

---

*Morales-Vichi v. Noem*, No. 25-CV-3754-GPC-KSC, 2025 WL 3764699, at *2-*5 (S.D. Cal. Dec. 30, 2025); *Betanco v. Divver*, No. 26-CV-0258-GPC-BJW, 2026 WL 172507, *3-*6 (S.D. Cal. Jan. 22, 2026); *Lagarda-Vega v. Noem*, No. 3:25-CV-02970-GPC-DDL, 2025 WL 3558931, *4-*7 (S.D. Cal. Dec. 11, 2025).

Dated:  February 18, 2026

Hon. Gonzalo P. Curiel
United States District Judge